**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4165**

UNITED STATES OF AMERICA,

                    Plaintiff – Appellee,

          v.

WILLIAM HORACE JOHNSON, JR.,

                    Defendant – Appellant.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.  Terrence W. Boyle,
District Judge.  (5:96-cr-00178-BO-1)

Argued:  March 26, 2010              Decided:  April 20, 2010

Before MOTZ, KING, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Paul K. Sun, Jr., ELLIS & WINTERS, LLP, Raleigh, North
Carolina, for Appellant.  Jennifer P. May-Parker, OFFICE OF THE
UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.
**ON BRIEF**: George E. B. Holding, United States Attorney, Anne M.
Hayes, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

William Horace Johnson, Jr., appeals from the district court's judgment revoking his term of supervised release and sentencing him to 22 months in prison. Johnson presents two primary appellate contentions: first, he challenges the court's revocation of supervised release, contending that it erred in admitting unreliable hearsay testimony at the revocation hearing; and, second, he maintains that the court gave an inadequate explanation for the revocation sentence, rendering it plainly unreasonable. As explained below, we affirm.

I.

In August 1997, Johnson was convicted in the Eastern District of North Carolina of extortion by interstate communication, in contravention of 18 U.S.C. § 875(b), and was subsequently sentenced to 151 months of imprisonment, plus 36 months of supervised release. In addition to the standard conditions of supervised release — such as working regularly at a lawful occupation and refraining from controlled substances — the court imposed special conditions of supervised release, including mental health and drug treatment and participation in a residential reentry program.

In November 2007, Johnson was released from custody and began serving on supervised release. To abide by the conditions

2

thereof, Johnson resided at the Bannum Place of Wilmington ("Bannum Place"), a residential reentry center in Wilmington, North Carolina. He also secured employment with a Wilmington restaurant and participated in a mental health treatment program at Wilmington's Trinity Wellness Center.

In June 2008, Johnson's probation officer, Kevin Connolley, moved to revoke supervised release, asserting that Johnson had violated several of his release conditions. More specifically, Connolley alleged that Johnson had missed multiple appointments with his therapist; had been fired from his job; and had used crack cocaine on several occasions. On June 18, 2008, at the conclusion of a revocation hearing, the district court found that Johnson had committed each of the alleged violations and revoked supervised release. The court imposed a 40-day revocation sentence, to be followed by 24 months of supervised release under the conditions it had initially imposed.

On July 11, 2008, Johnson was released from custody and began serving his second term of supervised release. He returned to Bannum Place, resumed his therapy program, and attempted to obtain lawful employment. Less than two months later, however, Probation Officer Connolley again moved to revoke Johnson's supervised release, alleging that Johnson had violated his release conditions by (1) failing to abide by the rules and conditions of Bannum Place (the "rules violation");

3

(2) failing to maintain lawful employment (the "employment violation"); and (3) failing to participate in a mental health treatment program (the "therapy violation"). With respect to the rules violation, Connolley asserted that Johnson was discharged from Bannum Place in August 2008 after he refused to follow a staff member's instructions. As to the employment violation, Connolley alleged that he instructed Johnson — who had been without work for nearly three months — to apply for employment at several fast-food restaurants in Wilmington, but that Johnson failed to do so because he considered such work "demeaning" and refused "to work around black people." J.A. 36.[1] Finally, Connolley maintained that Johnson committed the therapy violation by missing a scheduled session with his Trinity Wellness Center therapist on August 20, 2008. Connolley included with the revocation motion a Supervised Release Violation Worksheet, by which he applied Chapter 7 of the Sentencing Guidelines to calculate Johnson's advisory Guidelines range as 8 to 14 months.[2]

---

[1] Citations herein to "J.A. ___" refer to the Joint Appendix filed by the parties in this appeal.

[2] Chapter 7 of the Guidelines — entitled "Violations of Probation and Supervised Release" — includes, inter alia, a "Revocation Table" suggesting an appropriate term of imprisonment based on a defendant's criminal history category and the grade of his supervised release violation. See USSG § 7B1.4(a). Each of Johnson's three alleged violations is a
(Continued)

On February 11, 2009, the district court conducted a hearing on the second motion for revocation of supervised release. After Johnson denied violating any conditions of supervised release, the prosecutor presented Connolley's testimony to establish that Johnson had committed the three violations. Asserting that Connolley's testimony consisted of inadmissible hearsay, Johnson objected thereto. Johnson maintained that Connolley lacked first-hand knowledge of the alleged violative conduct and had only learned of Johnson's behavior by meeting with Johnson's therapist and the Bannum Place staff. Johnson thus protested that admission of Connolley's testimony infringed on his right to confront and cross-examine adverse witnesses. In response, the prosecution erroneously asserted that revocation proceedings "are appropriately treated . . . under the relaxed rules of evidence which permit the presentation of hearsay and summary evidence." J.A. 49-50. The prosecution thus maintained that Connolley could properly testify to Johnson's conduct in all instances.

---

"Grade C" violation, the lowest of the three grades, see id. § 7B1.1(a)(3), resulting in a Guidelines range of 8 to 14 months when combined with his criminal history category of VI, see id. § 7B1.4(a). Notwithstanding this advisory range, Johnson was also subject to a two-year statutory maximum sentence. See 18 U.S.C. § 3583(e)(3).

Without explanation, the district court overruled Johnson's hearsay objection, and Officer Connolley proceeded to testify in support of the three violations. Relying on reports from the Bannum Place staff, Connolley testified that Johnson committed the rules violation when he refused "to allow staff to review a receipt from a purchase he had made." J.A. 50. Connolley further testified, based on the therapist's account of Johnson's conduct, that Johnson missed a scheduled session at Trinity Wellness Center, thereby committing the therapy violation. Notably, however, Connolley had first-hand knowledge of the employment violation, testifying that he personally instructed Johnson to apply for employment at specific restaurants in the Wilmington area, and that Johnson had refused. Based solely on Connolley's testimony — the prosecution produced no other evidence, and Johnson neither testified nor presented any other evidence — the court found that Johnson had committed each of the three violations and revoked his term of supervised release.

The district court thereafter heard argument from the parties regarding sentencing. In that regard, the prosecution maintained that Johnson was "psychologically distorted" and had refused medication and proper treatment, rendering him "as dangerous . . . as he was when he was first incarcerated." J.A. 67. The Government thus requested a statutory maximum sentence of 24 months, notwithstanding Johnson's advisory Guidelines

6

range of 8 to 14 months. In response, Johnson's counsel stressed the "technical" nature of the violations and asked the court instead to "give [Johnson] credit for time served and terminate supervised release." Id. at 72. Johnson himself then spoke, emphasizing his history of mental illness and his various health problems. He asserted that the Bureau of Prisons (the "BOP") had neglected his mental health needs when he served his initial sentence and maintained that he likely would have received proper treatment had he been imprisoned at the Butner Federal Correctional Complex ("Butner") in Butner, North Carolina. Johnson also explained that he suffered from glaucoma that had not been properly treated. He concluded by informing the court that he was "struggling" and "need[ed] some relief." Id. at 75.

Following Johnson's statement, the district court explained that it would try to "do something positive" for him. J.A. 77. The court referenced Johnson's health problems and, in response to his claim that the "BOP has absolutely done me no good," explained that it would "try to change that and put you in a situation where you get somebody to pay attention to you and you get some care." Id. The court then imposed a 22-month revocation sentence — which equaled the balance of Johnson's second term of supervised release — and recommended that he serve his prison term at Butner. The court also recommended

7

that Johnson "receive mental health evaluation, mental health treatment, and counseling and medical treatment for his current medical problems." Id. at 78–79.

Johnson timely noticed this appeal, and we possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## II.

We review for abuse of discretion a district court's decision to revoke supervised release. See United States v. Pregent, 190 F.3d 279, 282 (4th Cir. 1999). In conducting such a review, we examine the court's findings of fact — including a finding that the defendant violated a condition of supervised release — for clear error. See United States v. Oquendo-Rivera, 586 F.3d 63, 67 (1st Cir. 2009). We review for abuse of discretion a district court's evidentiary rulings and subject them to harmless error review. See United States v. Johnson, 587 F.3d 625, 637 (4th Cir. 2009).

We review a sentence imposed after the revocation of supervised release to determine if it is "plainly unreasonable." See United States v. Crudup, 461 F.3d 433, 437 (4th Cir. 2006). "In determining whether a sentence is plainly unreasonable, we first decide whether the sentence is unreasonable," applying the same procedural and substantive considerations that we employ in

8

reviewing an initial sentence. Id. at 438. If the revocation sentence is either procedurally or substantively unreasonable, "we must then decide whether the sentence is plainly unreasonable, relying on the definition of 'plain' that we use in our 'plain' error analysis." Id. at 439.

### III.

#### A.

In this appeal, Johnson first challenges the district court's decision to revoke his term of supervised release, contending that the court abused its discretion by admitting and considering unreliable hearsay evidence — namely, Officer Connolley's testimony. Johnson maintains that Connolley's testimony was predicated on the out-of-court statements of various third parties and thus contravened Johnson's right to confront adverse witnesses.

Revocation hearings are deemed to be informal proceedings, in which the rules of evidence need not be strictly observed. See Fed. R. Evid. 1101(d)(3). Nevertheless, because such proceedings may result in a significant loss of liberty, the Supreme Court has determined that they must satisfy minimum requirements of due process, including a limited right "to confront and cross-examine adverse witnesses." Morrissey v. Brewer, 408 U.S. 471, 489 (1972). Federal Rule of Criminal

Procedure 32.1, which governs revocation proceedings, incorporates this limited right of confrontation, providing in pertinent part that a supervised releasee must be accorded the opportunity at a revocation hearing "to question any adverse witness, unless the judge determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(1)(B)(iii). Pursuant to Rule 32.1, "the court should apply a balancing test at the hearing itself when considering the releasee's asserted right to cross-examine witnesses" and should "balance the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it." Fed. R. Crim. P. 32.1 advisory committee's note (2002). Notably, we have recognized that, pursuant to Rule 32.1, a court may only consider hearsay evidence in a revocation proceeding if it is "demonstrably reliable." United States v. McCallum, 677 F.2d 1024, 1026 (4th Cir. 1982).

Here, there is no indication that the district court conducted a Rule 32.1 analysis. In authorizing the prosecution to present its case through the testimony of Officer Connolley — predicated on the erroneous advice of the prosecutor — the court did not assess whether "the interest of justice" warranted admission of hearsay evidence. See Fed. R. Crim. P. 32.1(b)(1)(B)(iii). Nor did the court determine that the out-

10

of-court statements underlying Connolley's testimony were "demonstrably reliable." See McCallum, 677 F.2d at 1026. Accordingly, the court necessarily abused its discretion when it admitted Connolley's hearsay testimony. See United States v. Delfino, 510 F.3d 468, 470 (4th Cir. 2007) ("A district court abuses its discretion when it . . . fails to consider judicially recognized factors constraining its exercise of discretion . . . .").

Nevertheless, the evidentiary error was necessarily harmless, in the circumstances of this case, for the prosecution presented sufficient non-hearsay evidence to support the employment violation. More specifically, Officer Connolley testified — based on his first-hand knowledge — that Johnson (1) had been unemployed for nearly three months prior to the filing of the revocation motion; and (2) refused to apply for jobs at local restaurants, despite being instructed by the probation office to do so. This evidence sufficed to prove that Johnson had failed to work regularly at a lawful occupation, as his conditions of release required. See 18 U.S.C. § 3583(e)(3) (authorizing revocation of supervised release if district court finds by preponderance that violation occurred). Accordingly, although the court erred in failing to make the Rule 32.1 assessment of whether the hearsay evidence was demonstrably reliable and whether the interest of justice necessitated its

11

admission, the court did not clearly err in finding that Johnson had violated a condition of supervised release; thus, the court did not abuse its discretion in revoking Johnson's supervised release. See Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

B.

Finally, Johnson challenges his revocation sentence as plainly unreasonable. The district court imposed a 22-month revocation sentence, less than the 24-month statutory maximum but more than the 8- to 14-month range advised by the Guidelines. Johnson maintains that the court procedurally erred by offering an insufficient explanation for the above-Guidelines sentence. In assessing whether Johnson's revocation sentence is plainly unreasonable, we must first determine whether the sentence is unreasonable, taking into account the sentencing court's broad discretion in imposing such a sentence. See United States v. Thompson, 595 F.3d 544, 546–47 (4th Cir. 2010). Indeed, our inquiry into whether a revocation sentence is unreasonable "takes a more deferential appellate posture concerning issues of fact and the exercise of discretion than reasonableness review for guidelines sentences." United States v. Moulden, 478 F.3d 652, 656 (4th Cir. 2007) (internal quotation marks omitted). Although a sentencing court must

12

provide a sufficient explanation of its sentence to enable an effective reasonableness review, "this statement need not be as specific as has been required for departing from a traditional guidelines range." Id. at 657 (internal quotation marks omitted). So long as the court presents some explanation for the sentence, thereby "provid[ing] us an assurance that [it] considered the § 3553(a) factors with regard to the particular defendant," we must defer to the sentencing decision. Id.; see also Thompson, 595 F.3d at 547.

Here, the district court provided a sufficient explanation of Johnson's 22-month revocation sentence. The court specifically referenced Johnson's mental health problems and observed that it would "try to do something positive" by placing Johnson where he could "get some care." J.A. 77. Indeed, after Johnson complained that the BOP had neglected his mental health during his initial term of imprisonment, the court recommended that Johnson serve his revocation sentence at Butner, where he could receive appropriate mental health evaluations, treatment, and counseling. Moreover, the court referenced Johnson's physical health problems, recommending that he receive proper treatment for glaucoma and other health issues.

The court thus properly predicated Johnson's 22-month revocation sentence on his need for medical treatment and care, a consideration squarely authorized by § 3553(a). See 18 U.S.C.

13

§ 3553(a)(2)(D); see also id. § 3583(e) (requiring sentencing court to consider aspects of § 3553(a) before imposing revocation sentence). Johnson does not contend that the court failed to consider other pertinent sentencing factors (or that it considered impermissible factors). In these circumstances, Johnson's revocation sentence is not unreasonable and thus cannot be plainly unreasonable. See Crudup, 461 F.3d at 440.[3]

---

[3] Johnson presents two additional sentencing contentions that we can reject without prolonged discussion. First, he maintains that the district court procedurally erred because it failed to consider his advisory Guidelines range. Although a sentencing court must consider the policy statements in Chapter 7 of the Guidelines when imposing a revocation sentence, see Crudup, 461 F.3d at 439, the court "need not engage in ritualistic incantation" in order to satisfy its burden, see United States v. Davis, 53 F.3d 638, 642 (4th Cir. 1995). So long as the advisory range was put before it, "[c]onsideration is implicit in the court's ultimate ruling." Davis, 53 F.3d at 642. Because Officer Connolley's motion for revocation accurately calculated the advisory Guidelines range, the court did not err in this regard.

Second, Johnson asserts that his above-Guidelines revocation sentence is substantively unreasonable, given the "technical" nature of his violations. The district court, however, predicated its chosen sentence on Johnson's need for therapy and medical treatment, and a court may properly consider a defendant's rehabilitative needs in determining the length of a revocation sentence. See Crudup, 461 F.3d at 440; see also 18 U.S.C. § 3553(a)(2)(D) (authorizing sentencing court to consider whether sentence provides defendant with needed medical care). Accordingly, the court did not substantively err when it imposed a 22-month sentence designed to enable Johnson to receive proper treatment.

IV.

Pursuant to the foregoing, we reject Johnson's appellate contentions and affirm.

AFFIRMED